UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

JUN 0 1 1999

MANTISSA CORPORATION, )
)
    Plaintiffs; )
) No. CV-96-P-3110-S
-vs.- )
)
ELECTRONIC DATA SYSTEMS )
CORPORATION, )

    Defendant(s).

ENTERED

JUN 0 2 1999

## OPINION

Before the court are the defendant's Motion for Partial Summary Judgment and Supplemental Motion for Partial Summary Judgment. Taken together, these motions seek summary judgment on all of the claims except for the plaintiff's Counts 9 and 10 and the defendant's counterclaims. For the reasons stated herein, the motions are due to be granted as to the tort-based claims and implied or quasi-contract claims and denied as to the breach of contract claim.

### Facts[1]

This lawsuit concerns license agreements between the parties governing the use of software products. Plaintiff Mantissa Corporation produces both mainframe-based and personal computer-based software products that are designed to help users process, generate, distribute, and access financial reports and information. Defendant Electronic Data Systems Corporation (EDS) provides data processing services to its Financial Services Division (FSD), which is comprised of banks, credit unions, and savings and loans. Although informational reports are delivered to FSD customers

---

[1] The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the non-moving party.

in various formats, EDS uses Mantissa PC-based software to transmit, review, and archive reports in an e-file format.

In December 1990, Mantissa and EDS entered into a Master Software Licensing Agreement (the "Master Agreement") which gave EDS the right to issue purchase orders and to license any of Mantissa's software products at certain terms and prices. In 1992, EDS and Mantissa began to discuss an alternative pricing arrangement under which Mantissa would grant EDS and FSD a universal license for the PC-based software for a substantial one-time fee. In March 1993, EDS and Mantissa entered into the First Amendment to the Master Software License Agreement (the "Amendment") under which EDS was to pay Mantissa $2.53 million over three years in exchange for an unlimited license to use, make copies of, market, and sublicense Mantissa's PC-based software. The portion of the Amendment relevant to the pending motions is the Grant of License, which reads as follows:

> Such Limited Corporate Software License shall permit EDS to use, market, sublicense, and make unlimited copies of Licensor's DeskTop and DeskTop Optical software, as further described on Exhibit A attached hereto, including any and all enhancements, modifications, updates, releases and documentation relating thereto ("Software") for EDS' Financial Services Division's (or its successor(s)) internal business purposes, and in support of and for use by the customers of EDS' Financial Services Division (or its successor(s)) at EDS or customer sites, except for General Motors Assurance Corporation ("GMAC"). Except where expressly agreed otherwise in this Amendment, the Software shall be considered Licensed Software under the Master Agreement and EDS shall have the same rights and be subject to the same restrictions in respect of the Software as it has and is subject to in respect of the Licensed Software.

Exhibit A to the Amendment is titled "Description of Software" and reads, in part, as follows:

> The Software shall consist of each of the following facilities and systems, whether integrated as a single system or made available as separate and distinct facilities or systems:
> "RMW/Desktop" which means the information processing program(s) for

2

processing, in a micro computer environment, report information received from mainframe computers which has been processed and dispatched by Licensor software programs, such as "RMS/SPOOL" or other Licensor software products; . . .

Mantissa brought this action in the Jefferson County Circuit Court on October 29, 1996. On November 27, 1996 EDS removed the case to this court. Mantissa's main contention is that EDS' use of the software violated the Amendment which, read in conjunction with Exhibit A, limits EDS' use of the software to situations in which the information accessed has been processed and dispatched "upstream" on mainframe computers using Mantissa mainframe software. Mantissa alleges the following ten counts: 1) misrepresentation and fraud concerning the scope of the Amendment; 2) suppression and concealment concerning the scope of the Amendment; 3) breach of the Amendment; 4) conversion; 5) conspiracy to commit the conduct alleged in Counts 1-4; 6) restitution in quasi-contract/unjust enrichment; 7) quantum meruit/quantum valebant; 8) misappropriation of trade secrets; 9) fraud, misrepresentation, suppression, breach of contract, and misappropriation of trade secrets in connection with EDS' use of RMS/DeskTop/ECR and RMS/Spool/ECR; and 10) breach of contract, conversion, and misappropriation of trade secrets in connection with EDS' use of certain components and subroutines of Mantissa's software products.

## Analysis

Defendant EDS offers several arguments in support of its motions for summary judgment. Citing the Master Agreement's Texas choice of law provision, EDS first contends that Mantissa's claims of fraud, suppression, conversion, conspiracy, restitution in quasi-contract/unjust enrichment, quantum meruit/quantum valebant, and misappropriation are barred by the applicable statutes of limitation because Mantissa knew of EDS' alleged misuse of the software more than three years prior to the filing of this lawsuit. Second, EDS argues that Mantissa fails to state tort causes of

3

action because its claims arise out of the contractual relationship and therefore sound in contract. Additionally, EDS asserts that Mantissa's claims for restitution in quasi-contract/unjust enrichment and quantum meruit/quantum valebant fail because an express contract governs the parties' relationship. Finally, EDS maintains that Mantissa's breach of contract claims fail as a matter of law because the terms of the agreements place no restrictions on EDS' use of the software. Even if Exhibit A restricts use, EDS argues, the "Most Favorable Terms" provision of the Master Agreement would operate to delete the restriction. The court addresses these arguments in the context of the various claims.

I. <u>Breach of Contract</u>

In support of its motion for summary judgment, EDS argues that both the Master Agreement and the Amendment are unambiguous and place no restrictions on EDS' right to use the PC-based software for all of the FSD customers except GMAC. To make this argument, EDS maintains that Exhibit A to the Amendment is merely a further description of the software and not a restriction requiring that report information be processed and dispatched by IBM mainframe computers. In reponse, Mantissa contends that EDS' interpretation of the Amendment ignores the language of Exhibit A as well as Mantissa's understanding that EDS would use the software only in situations in which Mantissa's mainframe software was involved "upstream" in processing and dispatching the report information.

Although EDS asserts that no ambiguity exists, the court finds that the seemingly broad Grant of License in the Amendment, when read in conjunction with the restrictive language in Exhibit A, as well as with the Most Favorable Terms provision in the Master Agreement, is ambiguous. The contract language does not suggest only one interpretation as to the scope of the

license. As a result, summary judgment is improper on the breach of contract claim. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

II. Tort-based Claims

With respect to EDS' statute of limitations arguments, to the extent that the discovery rule might apply, the court notes that genuine issues of material fact, concerning when Mantissa knew or should have known of the alleged wrongs, would preclude summary judgment. However, Mantissa's tort-based claims are subject to a more substantive challenge. Under Texas law, the applicable law in this case, when a plaintiff seeks damages for breach of a duty created by a contract, and not imposed by law, the claims sound in contract only. *See Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). The nature of the injury is also significant in determining whether a tort theory is available. When the only injury is economic loss to the subject matter of the contract, the action is ordinarily on the contract alone. *See id. See also Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).

Although Mantissa argues that EDS' use of the software was unauthorized, illegal, unlicenced, and extra-contractual, the court finds that the alleged tort claims do not exist independently of, or without reference to, the contractual relationship between the parties. Even though Mantissa alleges that EDS' actions were outside the scope of the contract, the contract itself is what creates and defines any duties the parties have to each other. Because the gist of Mantissa's claims is EDS' alleged deviation from or breach of the agreements, and because any duty that EDS had to use the software in a particular way arose out of the agreements, this action sounds in contract alone. Consequently, EDS' motion for summary judgment is due to be granted as to the claims of fraud, suppression and concealment, conversion, conspiracy, and misappropriation of trade secrets.

5

III. Restitution in Quasi-contract/Unjust Enrichment & Quantum Meruit/Quantum Valebant

Because a claim for unjust enrichment based on an implied or quasi-contract cannot be maintained when the same subject matter is covered by an express contract, EDS' motion for summary judgment as to Mantissa's Count 6 is due to be granted. *See Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App. 1996). Similarly, because recovery under quantum meruit/quantum valebant is inconsistent with recovery on an express contract covering the services or materials furnished, EDS' motion for summary judgment as to Mantissa's Count 7 is due to be granted. *See Woodward v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964).

IV. Conclusion

After careful review of the arguments, briefs, and evidence, the court finds that EDS' motions for summary judgment are due to be granted as to Counts 1, 2, 4, 5, 6, 7, and 8 of Mantissa's complaint and denied as to Count 3. The case will proceed on Counts 3, 9, and 10.

Dated: _June 1_, 1999

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
    John C. Morrow, Esq.
    Jeffrey R. Bragalone, Esq.
    David H. Marsh, Esq.
    Irene Grubbs, Esq.
    Jere F. White, Jr., Esq.
    E. Glenn Waldrop, Jr. Esq.